(No. 42335.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* DONALD L. COWGER, Appellee.

*Opinion filed May 20, 1970.*

WILLIAM J. SCOTT, Attorney General, of Springfield, and L. STANTON DOTSON, State's Attorney, of Charleston, (FRED G. LEACH, Assistant Attorney General, and RONALD TULIN and PAUL C. KOMADA, Assistant State's Attorneys, of counsel,) for the People.

SIMS AND GRABB, of Mattoon, (LAURENCE W. GRABB, of counsel,) appointed by the court, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Donald Cowger, pleaded guilty to a charge of armed robbery in the circuit court of Coles County in February of 1968, and he was sentenced to imprisonment for not less than two nor more than seven years. In May of 1969 that court granted his amended post-conviction petition and set aside his conviction on the ground that he had not been afforded the effective assistance of counsel because his appointed attorney permitted him to plead guilty to armed robbery rather than robbery. The State has appealed. Ill. Rev. Stat. 1967, ch. 38, par. 122—7.

It is not denied that on the evening of January 13, 1968, the defendant and Melvin Hayes, a co-defendant, robbed the Stop and Go Food Market in Mattoon, Illinois. At the hearing on the post-conviction petition, a clerk in the store testified that Hayes, who kept his right hand in his jacket pocket throughout the robbery, ordered her to put money in a bag. She said that she never saw a gun, although Hayes did "wiggle" his hand in the pocket of his jacket.

A fresh snow had fallen on the evening in question, and police officers were able immediately to track the footsteps of the two robbers directly from the store to the nearby residence of Mrs. Juanita Nash. With Mrs. Nash's permission, the officers entered the house and placed the defendant and Hayes under arrest. They found the winter jacket worn by Hayes during the robbery in one of the bedrooms,

and in the right-hand pocket of the jacket there was a .22 calibre revolver. The police officers left the house to take Cowger and Hayes to police headquarters, but they soon returned to continue the search, with Mrs. Nash's permission. In another bedroom of the house they found the stolen money stuffed into the spring of a mattress.

The defendant testified at his post-conviction hearing that on the day before the robbery he had hidden the revolver in a couch at Mrs. Nash's house. He testified that upon returning to that house after the robbery, he took the gun from under a cushion of the couch, handed it to Hayes, and told him to put it in the pocket of the jacket he had worn during the robbery "because his jacket pocket was larger than mine." The defendant denied that the weapon had been used during the robbery. Hayes, the defendant's principal witness at the post-conviction hearing, corroborated this story. He also testified that shortly after his arrest he had stated to the arresting and investigating officers that he had the gun in his jacket pocket during the robbery. This statement was first tape-recorded and was then transcribed and sworn to by Hayes.

A State's Attorney's investigator, Edward Kallis, testified as to the statements made by Cowger and Hayes shortly after being taken into police custody and informed of their rights. At Cowger's request, his statement was neither recorded nor transcribed. Kallis testified on direct examination that Cowger had admitted during his interrogation that Hayes had the gun in his possession during the robbery. At the post-conviction hearing Cowger denied having said this. On cross-examination, Kallis stated that he did not recall whether Cowger had said that he gave Hayes the gun after they got back to the house after the robbery. He then testified, "I don't recall those words. I'm not sure. He could have." Two patrolmen who were present during the defendant's interrogation testified similarly.

On January 15, 1968, William A. Cherikos, then the

public defender, was appointed to represent the defendant and Hayes. On January 18, 1968, on the advice of counsel, the defendant waived indictment, pleaded not guilty to an information charging him with armed robbery and conspiracy, and demanded a trial by jury. On February 7, 1968, the defendant was granted permission to withdraw his plea of not guilty and substitute therefor a plea of guilty. The defendant testified that he had told his appointed counsel that the gun had not been used during the robbery, but that Cherikos replied that "the fact that we never had the gun would not make that much difference." The defendant further testified that Cherikos had informed him that the possible sentences for robbery and armed robbery were the same. In fact, the penalty for robbery was imprisonment from one to 20 years (Ill. Rev. Stat. 1967, ch. 38, par. 18—1), whereas the penalty for armed robbery was an indeterminate term with a minimum of two years (Ill. Rev. Stat. 1967, ch. 38, par. 18—2). The defendant also testified that Cherikos told him that the only chance he had was to deal with the State's Attorney "for time", and that he had asked Cherikos to "see what the lowest sentence was he could possibly get for us."

The State's Attorney testified that after discussions with Cherikos, he ultimately agreed that if the defendant pleaded guilty to armed robbery he would recommend a sentence of three to ten years imprisonment, and also agreed to have a warrant for the defendant's violation of probation in another county dropped. After a full admonition, during the course of which the defendant stated that he was satisfied with the efforts of his appointed attorney, the defendant's plea of guilty was accepted. The State's Attorney recommended a sentence of three to ten years imprisonment, and the defendant's appointed attorney prevailed upon the trial judge to impose a sentence of from two to seven years. The warrant for the defendant's arrest for violation of probation was quashed.

The post-conviction hearing was conducted upon the erroneous theory that the facts upon which the petition was to be decided were those to which the co-defendants and other witnesses testified at the post-conviction hearing, and that the statements given by the co-defendants at the time of their arrest—and particularly the statement of the co-defendant Hayes—were admissible only for the purpose of impeaching their testimony at the post-conviction hearing. But the competence of the attorney who represented Cowger when his plea of guilty was entered is to be determined upon the basis of the facts available to that attorney at that time. Kallis testified that he had delivered a copy of Hayes's sworn statement to Cowger's appointed counsel, and that he had informed the appointed counsel that Cowger had told him that a gun had been used in the robbery.

In view of the factual situation with which the appointed attorney for the defendant was confronted at the time his plea of guilty was entered, we find it impossible to say that he did not competently represent him. He knew that the co-defendants did not deny that they had committed the robbery and that they had been caught red-handed in possession of the stolen money and of the gun which Hayes had sworn was in his right-hand jacket pocket while the robbery was being committed. The fact that the appointed attorney apparently did not believe that a judge or jury would be persuaded by the co-defendants' subsequent statements that no gun had been used in the robbery is hardly surprising. Certainly it does not demonstrate a lack of competence. The unpersuasive quality of the co-defendants' revised version adequately explains the statement of their attorney, as testified to by Cowger, that "the fact that we never had the gun would not make that much difference."

We cannot agree that the defendant's attorney was incompetent because he failed to take some affirmative action to bring about a reduction of the charge from armed robbery to robbery. Upon a review of the entire record, we are

of the opinion that Cowger was competently represented and that his appointed attorney secured for him a result which should have been entirely satisfactory. We are, therefore, of the opinion that the judgment must be reversed.

Curiously, the post-conviction hearing was conducted at a time when Cowger's appointed attorney was not present. An affidavit of that attorney filed in support of the State's Attorney's motion for rehearing recited that he had appeared in response to a subpoena when the case had previously been set for hearing, but that he was unaware of the date to which the hearing had been continued. His affidavit denied that he had advised Cowger that the sentences for armed robbery and for robbery were the same. However, a notice of appeal filed by the State's Attorney prior to his motion for rehearing deprived the trial court of jurisdiction to grant a rehearing. We have considered whether the case should not be remanded in order to give Cowger's appointed attorney an opportunity to testify, but we have concluded that it is more important that this litigation be terminated.

The judgment of the circuit court of Coles County is reversed.

*Judgment reversed.*